<u>NOT FOR PUBLICATION</u>

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

RONALD GEORGE BAILEY-EL,

            Plaintiff,

     v.

FEDERAL BUREAU OF PRISONS, <u>et al</u>.

            Defendants.

Civil Action
No. 04-5780 (JBS)

**<u>OPINION</u>**

APPEARANCES:

Mr. Ronald G. Baily-El
1600 Lorman Court
Baltimore, MD 21217
    <u>Pro</u> <u>Se</u> Plaintiff

Daniel J. Gibbons, Assistant U.S. Attorney
United States Attorney's Office
970 Broad Street
Suit 700
Newark, NJ 07102
    Attorney for Defendants

**SIMANDLE**, District Judge:

    This matter comes before the court upon the motion of

Defendants the Federal Bureau of Prisons (the "BOP"), the General

Counsel of the BOP as well as numerous employees of Federal

Correctional Institute Fairton ("FCI Fairton") and United States

Penitentiary Lee ("USP Lee") (collectively, the "Defendants").

Defendants argue that (1) this Court lacks personal jurisdiction

over certain defendants, (2) Plaintiff lacks standing to bring

his claim against the FCI Fairton law library and library personnel, and (3) Plaintiff failed to exhaust his administrative remedies before bringing his retaliatory transfer claim.  [Docket Item No. 66.]  Plaintiff Ronald George Bailey-El ("Plaintiff") brings this action as a pro se litigant pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), alleging three apparently unrelated claims for: (1) failure to allow access to the inmate law library at FCI Fairton and a retaliatory transfer from FCI Fairton to USP Lee; (2) improper handling of his legal mail by the mailroom staff at USP Lee; and (3) denial of a legal telephone calls at USP Lee.  For the reasons expressed below, the Court will grant Defendants' motion to dismiss.

**I.   BACKGROUND**

   **A.   Procedural History in the U.S. District Court for the District of Columbia**

   Plaintiff is Ronald G. Baily-El, a former inmate who was incarcerated at both FCI Fairton and USP Lee.  On December 24, 2003, Plaintiff filed a complaint (the "Complaint") in U.S. District Court for the District of Columbia.  That same day, U.S. District Judge Henry H. Kennedy entered a memorandum opinion and order, pursuant to 28 U.S.C. § 1915A, dismissing the claims Plaintiff brought against certain defendants because Plaintiff

had failed to state a claim upon which relief may be granted.[1]
Judge Kennedy's Order also stated that, to the extent that
defendants were sued in their official capacities, Plaintiff was
suing the United States under the Federal Tort Claims Act and
that court lacked subject matter jurisdiction because Plaintiff
had not filed an Administrative Tort Claim pursuant to 28 U.S.C.
§ 2675.  Since Judge Kennedy's Order, Plaintiff has not amended
his Complaint.

On June 15, 2004, the remaining defendants filed a motion to
dismiss or, in the alternative, transfer this matter to the
appropriate venue.  On October 12, 2004, Judge Kennedy granted
Defendants' motion in part and transferred this case to this
Court.

**B.  Facts**

On June 26, 2000, Plaintiff was sentenced by the United
States District Court for the District of Maryland to serve 78
months in prison (followed by three years of supervised release)
following his conviction for violation of 18 U.S.C. § 2113(a) &
2, bank robbery, aiding and abetting.  In July of 2000, the BOP
designated Plaintiff to FCI Fairton, a medium security level
prison located in Southern New Jersey.  On November 25, 2002,

---

[1]   Specifically, Judge Kennedy's Order dismissed the
Complaint against John Ashcroft, Harley Lappin, Harrell Watts,
Mickey Ray and the 23 individually named members of the General
Counsel of the BOP.

3

Plaintiff was transferred from FCI Fairton to USP Lee in Virginia.  According to Defendant, Plaintiff was transferred to increase the prison population at USP Lee and "for greater security reasons."  (Def.'s Br. at 4.)  Plaintiff asserts that his transfer to a higher security level prison was in retaliation for his complaints related to the adequacy of FCI Fairton's law library (discussed below).

Plaintiff's Complaint is broken down into three sections. Each claim is seemingly unrelated to the others, however.

### 1.   Plaintiff's Law Library Claim

First, Plaintiff claims that the inmate law library at FCI Fairton failed to timely process a request he made for legal materials.  As a result of this failure, Plaintiff missed a filing deadline related to an appeal in an action he was bringing against the City of Baltimore.  Specifically, Plaintiff states that the Fourth Circuit Court of Appeals had set an August 19, 2002 deadline for him to file a brief arguing why his case should not have been dismissed.  Plaintiff states that, on July 30, 2002, he requested information from FCI Fairton's law library he felt was necessary for his appeal.  (Compl. ¶ 15.)  Specifically, Plaintiff posed the following question to the law library at FCI Fairton:

> Please send me proof of a Judge's General Jurisdiction in the District Court of Baltimore.  Please be mindful that this is Maryland State Law.

> Please send me proof as to who has jurisdiction over the Notice of Appeal in the District Court of Baltimore City, I believe it's the Office of the Clerk, but I need proof.
>
> Please be advised: Court deadline of 8/10/02.

(Id.)  Because the law library at FCI Fairton did not have the materials requested by Plaintiff, FCI Fairton library personnel faxed the request to the New Jersey State Library on September 18, 2002.  The New Jersey State Library responded on October 3, 2002 that they could not fill the request because the information in the request was not specific enough.  (Declaration of Roberta Truman, Def.'s Br.)

### 2.  Plaintiff's Claim of Improper Handling of His Mail

Next, Plaintiff claims that, after he was transferred to USP Lee, Defendants at USP Lee "established a regular practice of opening, reading, inspecting and copying, out of Plaintiff's presence, Plaintiff's attorney mail and court mail . . . ." (Compl. ¶ 108.)  Plaintiff alleges that the following individuals were involved in this activity: Officers Bothoff, Teeters and Snodengrass, Assistant Inmate Manager Joni Badger, Inmate Systems Manager Dale Ruppert, Warden B.G. Compton, Regional Direction of the BOP Kim White, National Inmate Appeals Coordinator Harrell Watts, Jerry Jones, Wayne Smith, D.G. Gottllieb and Jessica Jones.[2]  (Id. ¶¶ 118-87.)  According to Defendants'

---

[2]  According to declarations presented by Defendants, the following Defendants "have not resided, conducted business, or

declarations, none of these Defendants had any contact with the State of New Jersey.

### 3.   Plaintiff's Telephone Claims

Finally, Plaintiff states that, on or about May 6, 2003, while incarcerated at USP Lee, Defendants Jessica Jones and Wayne Smith "maliciously, intentionally, and deliberately denied Plaintiff use of the telephone to place an attorney-client privileged call to Plaintiff's attorney."  (Id. ¶ 194.)  As explained above, according to Defendants' declarations, neither Jones nor Smith have or had any contact with the State of New Jersey.

On December 5, 2005, Defendants filed this motion to dismiss on behalf of all Defendants. [Docket Item No. 66.] On May 18, 2006, Plaintiff filed two motions: a motion for "copywork" (in which he requested that the Court provide him a copy of certain documents he had previously filed with this Court) and a motion for an extension of time to oppose Defendants' motion.  On July 13, 2006, this Court extended Plaintiff's time to oppose Defendants' motion until August 22, 2006.  [Docket Item No. 74]

---

owned real property in the State of New Jersey:" Joni Badger, William Bothof, B.G. Compton, Robin Teeters, Jessica Jones, Jerry Jones, Dale Rupert, Wayne Smith, and Dan Snodgrass.  (Declaration of Joni Badger; Declaration of William Bothof; Declaration of B.G. Compton;  Declaration of Robin Teeters; Declaration of Jessica Jones;  Declaration of Jerry Jones;  Declaration of Dale Rupert; Declaration of Wayne Smith; and Declaration of Dan Snodgrass, Def.'s Br. at Ex. A.)

After receiving correspondence from Plaintiff, on August 18, 2006, this Court (1) granted Plaintiff additional time to oppose Defendants' motion (requiring opposition filed by September 7, 2006) and (2) granted Plaintiff's motion for copywork (with the Clerk sending Plaintiff a copy of the requested documents, Docket Item Nos. 51, 63, 64 and 65 on August 18, 2006).  Plaintiff timely filed his opposition to Defendants' dismissal motion and this Court has fully considered it.

## II.  DISCUSSION

In their motion to dismiss, Defendants advance three arguments.  First, Defendants argue that Plaintiff's claims related to his legal mail (Compl. ¶¶ 118-193) and legal telephone calls (Compl. ¶¶ 194-262 ) are directed at Defendants that this Court does not have personal jurisdiction over.  Specifically, the events in question relate to activities at USP Lee and involve Defendants that have never had any contact with New Jersey.  Second, Defendants argue that Plaintiff has failed to demonstrate that his requests to the FCI Fairton law library were related to an appeal of his conviction, a habeas petition or a civil rights violation and therefore, Plaintiff has failed to establish an injury that would give him standing to bring an action in this Court.  Finally, Defendants argue that, under the Prison Litigation Reform Act, Plaintiff was required (but failed)

to exhaust his administrative remedies prior to filing a civil action addressing his claims of retaliatory transfer.

**A.   This Court Lacks Personal Jurisdiction over the Defendants Accused of Wrongdoing at USP Lee**

Plaintiff alleges that the following individuals were involved in the activities that gave rise to Plaintiff's claims of tampering with his legal mail and denying his access to a telephone to contact his attorney at USP Lee: Officers Bothoff, Teeters and Snodengrass, Assistant Inmate Manager Joni Badger, Inmate Systems Manager Dale Ruppert, Warden B.G. Compton, Regional Direction of the BOP Kim White, National Inmate Appeals Coordinator Harrell Watts, Jerry Jones, Wayne Smith, D.G. Gottllieb and Jessica Jones.[3]   (Id. ¶¶ 118-87.)   These individuals are employed either at USP Lee in Virginia or at the BOP regional offices in Maryland.   Because these Defendants have had no contact with New Jersey, this Court lacks personal jurisdiction over them.   As such, all claims against these Defendants must be dismissed.

---

[3]   According to declarations presented by Defendants, the following Defendants "have not resided, conducted business, or owned real property in the State of New Jersey:" Joni Badger, William Bothof, B.G. Compton, Robin Teeters, Jessica Jones, Jerry Jones, Dale Rupert, Wayne Smith, and Dan Snodgrass.   (Declaration of Joni Badger; Declaration of William Bothof; Declaration of B.G. Compton;   Declaration of Robin Teeters; Declaration of Jessica Jones;   Declaration of Jerry Jones;   Declaration of Dale Rupert; Declaration of Wayne Smith; Declaration of Dan Snodgrass.)

In the Third Circuit, once a defendant raises the defense that the court lacks personal jurisdiction, plaintiff bears the burden of establishing personal jurisdiction.  See Mellon Bank (East) P.S.F.S. v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992).  While the plaintiff bears the burden, he need only establish a prima facie case to establish the existence of personal jurisdiction over a defendant where the factual record contains only pleadings and affidavits.  See LaRose v. Spondo Mfg., Inc., 712 F. Supp. 455, 458 (D.N.J. 1989).  Under Fed. R. Civ. P. 4(e), a district court has personal jurisdiction over nonresident defendants "to the extent authorized under the law of the forum state in which the district court sits."  Sunbelt Corp. V. Noble, Denton & Assoc., Inc., 5 F.3d 28, 31 (3d Cir. 1993).  New Jersey's long-arm statute extends personal jurisdiction to the boundaries of the Due Process Clause of the Fourteenth Amendment.  See N.J. Ct. R. 4:4-4.  Thus the only analysis that this Court must perform is whether the assertion of personal jurisdiction over the Defendant satisfied the Due Process Clause.

### 1.   Plaintiff's Argument

In response to Defendants' argument that this Court lacks personal jurisdiction, Plaintiff argues that such an analysis into these Defendants' contacts with New Jersey is unnecessary because "there are at least two federal statutes that provide the Court with nationwide service of process," citing 28 U.S.C. §

1391(e) and 28 U.S.C. § 1915(d).  Nationwide service of process,
where authorized by statute, allows personal jurisdiction to by
predicated upon the defendant's physical presence anywhere in the
United States.  See Max Daetwyler Corp. v. R. Meyer, 762 F.2d 290
(3d Cir. 1985); see also Pinker v. Roche Holdings Ltd., 292 F.2d
361, 369 (3d Cir. 2002).  In support of his argument that 28
U.S.C. § 1391(e)[4] authorizes nationwide service of process,
Plaintiff cites Cameron v. Thornburgh, 983 F.2d 253, 256 (D.C.
Cir. 1993) and Tenefancia v. Robinson Export and Import Corp.,
921 F.2d 556, 558 n.2 (4th Cir. 1990).  In addressing 28 U.S.C. §
1315(d),[5] Plaintiff fails to cite any case law in support of its
position that national service of process is authorized.

---

[4]   Section 1391, which addresses the issue of venue states:

(e) A civil action in which a defendant is an officer
or employee of the United States or any agency thereof
acting in his official capacity or under color of legal
authority....may...be brought in any judicial district
in which (1) a defendant in the action resides, (2) a
substantial part of the events or omissions giving rise
to the claim occurred, or a substantial part of
property that is the subject of the action is situated,
or (3) the plaintiff resides. . . .

28 U.S.C. § 1391(e).

[5]  Section 1915 relates to proceedings in forma pauperis and
states:

The officers of the court shall issue and serve all
process, and perform all duties in such cases.
Witnesses shall attend as in other cases, and the same
remedies shall be available as are provided for by law
in other cases.

Addressing the issue of a court having personal jurisdiction over a defendant through nationwide service of process, the Third Circuit has held that "in the absence of a federal statute authorizing nationwide service of process[,] federal courts are referred to the statutes or rules of the state in which they sit." Max Daetwyler Corp., 762 F.2d at 297 (cited in Dent v. Cunningham, 786 F.2d 173, 175 (3d Cir. 1986)).  Here, the first statute cited by Plaintiff as authorizing nationwide service -- 28 U.S.C. § 1391(e) -- addresses the issue of whether a particular district court is the proper venue for a plaintiff to bring a case.  While Section 1391(e) does contain a nationwide service of process provision, the District of Columbia Circuit explained that "case law interpreting the statute provide[s] for personal jurisdiction over suits for injunctive relief against defendants in their official capacity . . . [but] § 1391(e) applies only to suits against government officers in their official capacities, not to Bivens actions." Cameron v. Thornburgh, 983 F.2d 253, 256 (D.C. Cir. 1993)(internal quotations omitted)(citing Stafford v. Biggs, 444 U.S. 527 (D.C. Cir. 1977)).  According to Plaintiff's own Complaint, Plaintiff brings his claims under Bivens, stating that "Plaintiff commences this Bivens action against all the named Defendants seeking monetary damages in the Defendant's individual capacities only." (Compl. ¶ 3.)  In addition, the second statute cited by Plaintiff

as authorizing nationwide service, 28 U.S.C. § 1915(d), addresses the issue of service of process when an individual is proceeding in forma pauperis and does not authorize nationwide service. Thus, neither statute cited by Plaintiff authorizes the use of nationwide service in this matter as Plaintiff suggests.

### 2.  Specific Jurisdiction

Because Plaintiff is proceeding in this action <u>pro</u> <u>se</u>, this Court will analyze whether this Court has personal jurisdiction over these Defendants in another manner.  Although a district court can exercise personal jurisdiction over a nonresident defendant if the court possesses either general or specific jurisdiction, Plaintiff can only plausibly argue in the alternative that this Court has specific jurisdiction over the Virginia and Maryland Defendants, claiming that this Court has specific jurisdiction over the Defendants because Plaintiff's claims are related to or arise out of Defendants' purposeful contacts with the forum state (New Jersey).

A plaintiff asserting specific jurisdiction over a non-resident defendant must establish that the defendant (1) has made the necessary "minimum contacts" for the assertion of jurisdiction, and (2) those contacts must be deemed reasonable, such that the court's assertion of jurisdiction "would comport with 'fair play and substantial justice.'" <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 476 (1985) (quoting <u>International Shoe</u>

Co. v. Washington, 326 U.S. 310, 320 (1945)).  Deciding whether a defendant has the minimum contacts with the forum state requires a determination that "the defendant purposefully avails itself of the privilege of conducting activities with the forum State, thus invoking the benefits and protection of its laws."  Hanson v. Denckla, 357 U.S. 235, 253 (1958).  "A single, unsolicited contact, random or fortuitous acts or the unilateral acts of others (including the plaintiff) do not constitute a purposeful connection between the defendant and the forum state."  Osteotech v. Gensci Regeneration Sciences, Inc., 6 F. Supp. 52, 56 (D.N.J. 1998) (citing Burger King, 471 U.S. at 476).[6]  In an action challenging personal jurisdiction, the plaintiff bears the burden of demonstrating sufficient contacts within the forum state to give the court personal jurisdiction over the defendant.  See Compagnie des Bauxites de Guinee v. L'Union Atlantique S.A. D'Assurances, 723 F.2d 357, 362 (3d Cir. 1983).

Here, Plaintiff cannot demonstrate that the Defendants had sufficient minimum contacts with New Jersey for this Court to exercise personal jurisdiction over them.  The events alleged in the Complaint involving these Defendants took place outside of New Jersey; mainly at USP Lee in Virginia.  Plaintiff has failed

---

[6]  Physical presence within the forum state, however, is not required to establish personal jurisdiction over a non-resident defendant.  Burger King, 471 U.S. at 476.

to make any allegations that these Defendants have worked, lived
or done any action to "show purposeful availment" to the laws of
that jurisdiction.   Moreover, Defendants have submitted
declarations from these Defendants declaring that they do not
reside in New Jersey and have never had contact with the State of
New Jersey.   Plaintiff, who bears the burden of proof to
demonstrate that this Court has jurisdiction over these
Defendants, has failed to rebut Defendants' argument.   As such,
this Court finds that this Court lacks personal jurisdiction over
the Maryland and Virginia Defendants[7] and Plaintiffs' claims
against these individuals will be dismissed.[8]

### B.   Plaintiff Lacks Standing to Bring his Claim Related to the Access to the Inmate Law Library

Plaintiff's second claim is directed at employees working at
FCI Fairton's law library.  (Compl. ¶¶ 14-106.)   Plaintiff
claims that his request – first made to FCI Fairton's law library
and then to the State of New Jersey's public library system –

---

[7]   Specifically, these Defendants are Officers Bothoff,
Teeters and Snodengrass, Assistant Inmate Manager Joni Badger,
Inmate Systems Manager Dale Ruppert, Warden B.G. Compton,
Regional Direction of the BOP Kim White, National Inmate Appeals
Coordinator Harrell Watts, Jerry Jones, Wayne Smith, D.G.
Gottllieb and Jessica Jones.

[8]   Because this Court finds that these Defendants do not
have the requisite minimum contacts to trigger personal
jurisdiction, this Court need not address whether exercising
jurisdiction over these Defendants "accords with the notions of
'fair play and substantial justice.'"   Mesalic v. Fiberfloat
Corp., 897 F.2d 696, 701 (3d Cir. 1990)(quoting International
Shoe, 326 U.S. at 316.)

were not fulfilled in a timely manner.  Specifically, Plaintiff submitted copies of his two requests (Request Nos. 621 and 650). Both requests asked:

> Please send me proof of a Judge's General Jurisdiction in the District Court of Baltimore.  Please be mindful that this is Maryland State Law.
>
> Please send me proof as to who has jurisdiction over the Notice of Appeal in the District Court of Baltimore City, I believe it's the Office of the Clerk, but I need proof.
>
> Please be advised: Court deadline of 8/10/02

(Compl. ¶ 15.)  Plaintiff alleges that, because he did not receive the requested materials on time, he missed a filing deadline related to his appeal of a dismissal of a civil action he instituted.

Before a federal court can consider the merits of a legal claim, "the person seeking to invoke the jurisdiction of the court must establish the requisite standing to sue." Whitmore v. Arkansas, 495 U.S. 149, 154 (1990); see also Petroleos Mexicanos Refinancion v. M/T KING, A (Ex-Tbilisi), 377 F.3d 329, 224 (3d Cir. 2004)("standing is a question of subject matter jurisdiction.")  Article III of the Constitution limits the judicial power of federal courts to "cases or controversies" between parties.  U.S. CONST. art. III, § 2.  To satisfy Article III's standing requirements, a plaintiff must allege:

> (1) [an] injury in fact, which is an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not

conjectural or hypothetical; (2) a causal connection
between the injury and the conduct complained of; and
(3) [that] it must be likely, as opposed to merely
speculative, that the injury will be redressed by a
favorable decision.

Danvers Motor Co., Inc. v. Ford Motor Co., 432 F.3d 286, 290-91

(3d Cir. 2005) (citing Lujan v. Defenders of Wildlife, 504 U.S.

555, 560-61 (1992)).  To establish an "injury in fact," a

plaintiff must show that he has "sustained or is immediately in

danger of sustaining some direct injury as the result of the

challenged official conduct and the injury or threat of injury

must be both 'real and immediate,' not 'conjectural' or

'hypothetical.'"  City of Los Angeles v. Lyons, 461 U.S. 95,

101-02 (1983) (citations and internal quotation marks omitted);

see also Danvers Motor Co., 432 F.3d at 291.  The plaintiff bears

the burden of establishing standing. See Storino v. Borough of

Point Pleasant Beach, 322 F.3d 293, 296 (3d Cir. 2003).  The

plaintiff must "clearly and specifically set forth facts

sufficient to satisfy standing as a federal court "is powerless

to create its own jurisdiction by embellishing otherwise

deficient allegations of standing." Whitmore, 495 U.S. at

155-56.

Defendants argue that Plaintiff has failed to show that he

suffered any injury in fact.  (Def.'s Br. at 11.)  Rather,

Defendants argue that Plaintiff has simply "submitted an

arbitrary argument that does not stand up to a logical inquiry"

and that his claims against the New Jersey State Law Library are "speculative at best."

Defendants are correct and this Court will dismiss Plaintiff's claims involving the law libraries of FCI Fairton and the State of New Jersey because Plaintiff lacks standing to bring this action.  In <u>Lewis v. Casey</u>, the Supreme Court explained that, in order to prove that he suffered a harm, an inmate must show that "the alleged inadequacies of a prison's library facilities or legal assistance program caused him 'actual injury'...such as the inability to meet a filing deadline or present a claim."  518 U.S. 343, 348 (1996).  Summarizing the holding of the case of <u>Bounds v. Smith</u>, 430 U.S. 817 (1997), the <u>Lewis</u> court informed that even if a prisoner can show that the inadequacy of the library "hindered his efforts to pursue a legal claim," <u>id.</u> at 351, "the injury requirement [and therefore, the standing requirement] is not satisfied by just any type of frustrated legal claim."  <u>Id.</u> at 354.  Indeed, the <u>Lewis</u> court explained that such injuries had to relate to an inmates' efforts to "pursue direct appeals from the convictions for which they were incarcerated or habeas petitions . . . [or] 'civil rights actions' [that sought to] vindicate 'basic constitutional rights.'"  <u>Id.</u> (internal citations omitted).  Thus:

> <u>Bounds</u> does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims.  The tools it requires to be

> provided are those that the inmates need in order to
> attach their sentence, directly or collaterally, and in
> order to challenge the conditions of their confinement.
> Impairment of an other litigating capacity is simply
> one of the incidental (and perfectly constitutional)
> consequences of conviction and incarceration.

Id.

In this case, as stated in the Complaint, Plaintiff is seeking information "to challenge the fact as to who has jurisdiction over the notice of appeal in the District Court of Baltimore City . . . ." (Compl. ¶ 15.) Plaintiff fails to state that this requests related to an appeal of his conviction, a habeas petition he filed or a civil rights action in which he sought to vindicate a basic constitutional right. Thus, Plaintiff has failed to state the type of injury required to have standing to challenge the actions of prison law library personnel or the adequacy of a prison law library or legal assistance program. As such, Defendants' motion to dismiss Plaintiff's claims against the FCI Fairton law library personnel, the State of New Jersey law library personnel and all other Defendants related to this claim is granted and this claim is dismissed.

**C.   Plaintiff failed to Exhaust his Administrative Remedies**

As discussed in Section I.B, _supra_, Plaintiff's Complaint contains a claim that he was transferred from FCI Fairton (a medium security level facility) to USP Lee (a maximum security level facility) in retaliation for his complaining about the law library at FCI Fairton. In their motion papers, Defendants argue

that Plaintiff's claim must be dismissed because Plaintiff has failed to exhaust his administrative remedies prior to bringing a suit in federal court.

Under the Prison Litigation Reform Act of 1995 ("PLRA"), an inmate must fully exhaust his available administrative remedies prior to filing a civil action in federal court.  See Porter v. Nussle, 534 U.S. 516, 520 (2002).  Specifically, 42 U.S.C. § 1997(e) states that "no action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted."  Thus, an inmate must (1) initiate a grievance and (2) appeal any denial of relief through all available appellate levels that comprises the administrative grievance process.  See White v. McGinnis, 131 F.3d 593, 595 (6th Cir. 1997).  "There is no doubt that the PLRA's exhaustion requirement is mandatory."  Anderson v. XYZ Corr. Health Sys., 407 F.3d 674, 677 (4th Cir. 2005); see also Porter, 534 U.S. at 524 ("Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory."  All available remedies must now be exhausted; those remedies need not meet federal standards, nor must they be plain, speedy, and effective. Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a

prerequisite to suit.")  Thus, the exhaustion requirement applies to § 1983 and Bivens actions.  See Nyhuis v. Reno, 204 F.3d 65, 71-78 (3d Cir. 2000).

The BOP has established an administrative remedy procedure through which an inmate can seek formal review of a complaint regarding the conditions of his confinement.  See 28 C.F.R. § 542.10 et seq.  First, "an inmate shall...present an issue of concern formally to staff, and staff shall attempt to informally resolve the issue . . . ."  28 C.F.R. § 542.13(a).  Next, if the matter cannot be informally resolved, the inmate must submit a Request for Administrative Remedy to which the warden must timely respond.  See id. at § 542.14(a).  If unsatisfied with the resolution, the inmate may appeal to the Regional Director.  See id. § 542.15.  No administrative remedy appeal is considered exhausted until it has been considered by the General Counsel.  See id. § 542.18.

Plaintiff has failed to begin the second step of the administrative remedy procedure (i.e., filing an Administrative Remedy Request concerning the issue of retaliatory transfer).  Instead, Plaintiff has attempted to by-pass the first two-steps of the administrative remedies procedure when he included a one sentence description of the issue of retaliatory transfer.  Specifically, in his appeal to the Central Office on Administrative Remedy No. 280929-A (on his Regional

Administrative Remedy Appeal), Plaintiff mentioned that he has "receive a retaliatory transfer to a maximum security prison for filing this grievance."  (Truman Decl., p. 6, Def.'s Ex. B.) Plaintiff argues that the claims "were two closely related issues" and, as such, the administrative remedy procedure should be considered exhausted as to this claim.  This Court, however, will not allow Plaintiff to bypass the first two steps of the administrative remedies procedure.  To do so would invite inmates to "tack on" claims to a request for remedy as the request moves through the administrative remedy process and thwart the intent of Congress (i.e., to allow prison administrators the first opportunity to informally resolve inmate claims before an inmate can file suit in federal court) when it passed the PLRA.  As such, Plaintiff has failed to exhaust his administrative remedies with regard to his claims of retaliatory transfer and the Court shall dismiss this claim.

## III. <u>CONCLUSION</u>

For the reasons set forth above, this Court will grant Defendants' motion to dismiss.  Because this Court lacks personal jurisdiction against all of the Defendants' named in Plaintiff's claims of interference with his legal mail and attorney-client telephone communications, these claims must be dismissed.  In addition, Plaintiff lacks standing to bring his claim regarding the law library at FCI Fairton because, under Supreme Court

precedent, Plaintiff's injuries are not the type that give him standing to challenge the actions of personnel in or the adequacy of, a prison law library.  Finally, because Plaintiff has failed to exhaust his administrative remedies, the Court must dismiss his claims of retaliatory transfer from FCI Fairton to USP Lee. The appropriate Order will be entered.


**September 26, 2006**           **s/ Jerome B. Simandle**
Date                        JEROME B. SIMANDLE
                            United States District Judge